IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.     CRIMINAL ACTION NO.   3:16-00092-08

SAMUEL E. NELSON, III

## MEMORANDUM OPINION AND ORDER

Defendant Samuel Nelson, III moves this Court to suppress drugs found in his car after he was stopped for a nonfunctional daytime running light and briefly driving on a roadside shoulder. On November 7, 2016, the Court held a hearing on Nelson's Motion to Suppress. ECF No. 350. At the hearing the Court made factual findings but reserved ruling on whether Nelson's Fourth Amendment rights were violated by the traffic stop. For the reasons explained in this Memorandum Opinion and Order the Court **DENIES** Nelson's Motion to Suppress.

The factual findings on which this Order rests were recited by the Court at the November 7, 2016 hearing. The Court therefore finds no need to recapitulate the facts in extensive detail here. A brief explanation of the facts is appropriate.

**I.     Background**

On April 12, 2016, federal agents intercepted phone calls, pursuant to a court approved wiretap, between Nelson and co-defendant Atari Brown. The calls revealed that on April 13, 2016 Brown agreed to sell a large quantity of heroin to Nelson at an apartment Brown kept for the purpose of storing illegal drugs. The federal agents informed local law enforcement, including a Trooper Williams with the West Virginia State Police, about the scheduled drug sale. The federal agents also asked local law enforcement for assistance on April 13, the day of the proposed sale.

On April 13, 2016, Trooper Williams was stationed near the apartment where the sale was to take place. Federal agents were conducting surveillance of the apartment. After the sale, federal agents alerted Trooper Williams that Nelson was leaving Brown's apartment. Trooper Williams intercepted Nelson as he was driving south on Hal Greer Boulevard. He noticed that one of his front daytime running lights was out and saw Nelson briefly cross the "fog line" onto the shoulder of the road. Trooper Williams then made a traffic stop for the malfunctioning headlight and for leaving his lane.

Once stopped, Trooper Williams approached Nelson's vehicle and asked him where he was coming from. Nelson responded that he had just dropped his son off at Marshall University but he could not recall at which dorm or apartment. Trooper Williams then asked Nelson to step out of his car. He presented Nelson with a form requesting consent to search his vehicle. Nelson consented to a search and signed the form. About ten minutes into the search Nelson revoked his consent. Trooper Williams then retrieved a drug-sniffing dog from his cruiser and began a search with the dog. After about five minutes, the dog alerted on the car. Trooper Williams, informed earlier that Nelson had spent a longer than usual period standing near the driver's side door after the sale, used tools to remove a panel on the driver's side of the dashboard. Underneath the panel he found a package wrapped in a number of black plastic trash bags. In the bags was a vacuumed sealed package that was determined to contain approximately 130 grams of heroin.

Nelson moved to suppress the heroin in a motion arguing that the stop was purely pretextual and Trooper Williams did not have reasonable suspicion to support a search for drugs in Nelson's car. As such, Trooper Williams impermissibly extended the traffic stop to conduct an illegal search for drugs. At the hearing, Nelson also argued that even if the search after Nelson revoked his

consent was supported by probable cause, Trooper Williams did not have probable cause to open the bag found inside the dashboard.

## II.     Legal Standard

There are three issues that need to be addressed to find that the stop and search were properly supported by the required levels of suspicion. First, Trooper William's traffic stop must be supported by reasonable suspicion. Second, the extension of Nelson's seizure after Nelson revoked consent must also have been supported by reasonable suspicion. Finally, the search of the bag found in the dashboard must have been supported by probable cause to search the vehicle for drugs.

A traffic stop constitutes a "seizure" under the Fourth Amendment and is therefore subject to a reasonableness standard. *Whren v. United States*, 517 U.S. 806, 810 (1996). A vehicle stop premised on a traffic violation is similar to an investigative detention and its constitutionality is analyzed in accord with the two-prong test articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015). Accordingly, a vehicle stop must be premised on reasonable suspicion as determined by an objective view of the facts known to the officer at the inception of the stop, and the search and seizure must be "reasonably related in scope" to the basis for the stop. *Whren*, 517 U.S. at 813; *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992).

"[T]o extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess "reasonable suspicion or receive the driver's consent." *Williams*, 808 F.3d at 245-46 (citing *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011); *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008)). While a search with a dog of the exterior of a vehicle is not a search subject to Fourth Amendment protections, the continued

seizure of a suspect in order to conduct a search that extends the traffic stop past its original purpose must be supported by reasonable suspicion. *Id.*

Lastly, a drug-sniffing dog alert on the exterior of vehicle establishes probable cause that the vehicle contains illegal drugs. *Florida v. Harris*, ___ U.S. ___, 133 S. Ct. 1050, 1057 (2013). The scope of the subsequent search is no greater and no smaller than a search authorized by a warrant and supported by probable cause. *California v. Acevedo*, 500 U.S. 565, 570 (1991). Thus, the searching officer is permitted to search in any place or container in the vehicle that may contain the contraband which is the object of the search. *Id.*

### III. Discussion

Based on testimony taken at the November 7 hearing, Trooper Williams had reasonable suspicion that Nelson had committed a traffic violation for driving with one daytime running light out, *see* W. VA. CODE § 17C-15-1 (Unsafe and improperly equipped vehicles), and crossing the fog line onto the shoulder of the road, *see* W. VA. CODE § 17C-7-9 (Driving on roadways laned for traffic). Trooper Williams also had reasonable suspicion, based on information from federal agents, that Nelson had committed a drug crime and evidence of the crime was in his vehicle.

Trooper Williams' stated reason for the stop, the daytime running light, and leaving the lane, were almost certainly pretextual. Trooper Williams was fed information about Nelson by federal agents conducting a drug trafficking investigation. Trooper Williams stopped Nelson to search for drugs, not for a traffic violation. Trooper Williams' subjective intent, however, is not the measure of reasonableness. The Supreme Court has held on several occasions that a reviewing court must take an objective view of the facts to determine if the officer's actions were indeed reasonable. *See Ohio v. Robinette*, 519 U.S. 33, 38 (1996); *Whren*, 517 U.S. at 813.

Here, viewed objectively, Trooper Williams had reasonable suspicion that Nelson had committed a traffic violation. He also had reasonable suspicion[1] that Nelson had or was in the process of committing a drug crime and evidence of the crime would be found in his vehicle. Federal agents informed Trooper Williams that Nelson had arranged a drug transaction for the morning of April 13 to take place at Brown's apartment. The agents informed Trooper Williams when Nelson left Brown's apartment on the morning of April 13, and the defining characteristics of his car and its direction of travel. Trooper Williams also knew through a GPS tracker installed on Brown's vehicle that Brown was at the apartment at the same time the federal agents reported Nelson was at the apartment. Although Trooper William's stated reason for the stop was a traffic violation, viewed objectively, a stop for drugs was supported by reasonable suspicion.

Moving to the search of Nelson's vehicle, Nelson does not contest any part of the search based on his consent. The main thrust of his argument attacks Trooper Williams' search after Nelson revoked consent. Before reaching Nelson's primary argument, however, Nelson made a glancing argument at the hearing aimed at the questions Trooper Williams asked at the outset of the stop. Trooper Williams asked Nelson where he was coming from, to which Nelson responded that he had just delivered his son to Marshall. Upon further questioning Nelson could not recall where exactly he had left his son. These questions were certainly within the scope of a stop premised on suspicion of a drug crime. Indeed, the questions were arguably within the scope of a stop premised only on a traffic violation. *See Arizona v. Johnson*, 555 U.S. 323, 327-28 (2009) (holding that some unrelated investigations that do not extend the length of a legitimate traffic stop

---

[1] Based on the testimony adduced at the November 7 hearing, Trooper Williams arguably had probable cause to stop and search Nelson's vehicle for drugs. *See Illinois v. Gates*, 462 U.S. 213 (1983). Nonetheless, the Court declines to reach this issue because Trooper Williams needed only reasonable suspicion to stop Nelson and conduct a limited inquiry aimed to discover evidence of drug activity.

are permissible). The Court need not reach that issue here, however, because the information known to Trooper Williams about Nelson's suspected drug activity was enough to provide support for a stop and search for a drug crime.

Turning to the continued seizure after Nelson revoked his consent to search, Trooper Williams' did not impermissibly extend the stop to search for drugs. "[T]o extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess "reasonable suspicion or receive the driver's consent." *Williams*, 808 F.3d at 245-46 (citing *Digiovanni*, 650 F.3d at 507; *Branch*, 537 F.3d at 336). Only Nelson's continued seizure, not the search with the dog, need be supported by reasonable suspicion. *Williams*, 808 F.3d at 246. A search with a drug-sniffing dog does not constitute a search cognizable by the Fourth Amendment because the dog sniff only reveals contraband items in which their owners have no reasonable expectation of privacy. *Caballes*, 543 U.S. at 409-10.

The facts presented to the Court tend to demonstrate that at the time of the stop, Trooper Williams doubted he had reasonable suspicion to stop and search Nelson's vehicle for drugs. Had Trooper Williams believed he had reasonable suspicion, he would not have had to make an obviously pretextual "traffic stop." Nonetheless, guided by the objective standard demanded by the Supreme Court, the facts known to Trooper Williams created reasonable suspicion to stop Nelson for a drug crime even if Trooper Williams' subjective assessment did not connect all of the dots. The scope of his search and the duration of his seizure are thus determined by the reasonable suspicion that Nelson was transporting evidence of a drug crime in his vehicle. Therefore, reasonable suspicion supported a continued seizure of Nelson after Nelson revoked his consent.

Moreover, once Trooper Williams' dog indicated that it had detected the scent of illegal drugs, Trooper Williams had probable cause to search the vehicle for drugs. *Florida v. Harris*, \_\_\_\_\_ U.S. \_\_\_\_, 133 S. Ct. 1050, 1057 (2013).[2]

Turning lastly to the scope of Trooper Williams' search of Nelson's vehicle, Trooper Williams did not violate Nelson's Fourth Amendment rights by searching the bag found in Nelson's dashboard. A warrantless search of a vehicle based on probable cause is identical in scope to a search authorized by a warrant and supported by probable cause. *California v. Acevedo*, 500 U.S. 565, 570 (1991). "Thus, if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

The dog's alert created probable cause that Nelson had drugs in the car. Once Trooper Williams found the black plastic bag inside the dashboard, Trooper Williams' search of the bag was supported by the same probable cause that supported his search of Nelson's vehicle for drugs. Nelson does not seriously dispute that drugs could not be hidden in a series of plastic bags, and indeed any argument of that kind would have been dismissed out of hand. Therefore, Trooper Williams' search of the plastic bag did not violate Nelson's constitutional rights.

In sum, Trooper Williams had reasonable suspicion to stop Nelson for a traffic violation and suspected drug activity, Nelson's seizure post revocation was supported by reasonable suspicion, and Trooper Williams' search of the plastic bag containing heroin was supported by probable cause. Accordingly, Nelson's Motion to Suppress, ECF No. 350, is **DENIED**.

---

[2] The Court conditioned its holding that a positive dog alert establishes probable cause on proof of "a dog's satisfactory performance in a certification or training program." *Id.* Nelson does not challenge the dog's training and thus this Court need not address the accuracy of this dog's search.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

        ENTER:       November 16, 2016.

                      ROBERT C. CHAMBERS, CHIEF JUDGE